JOSÉ BETANCOURT ROJAS, Petitioner, *v.* SUPERIOR COURT OF PUERTO RICO, ARECIBO PART, FAUSTO RAMOS QUIRÓS, JUDGE, Respondent; THE PEOPLE OF PUERTO RICO, Intervener.

No. C-63-77. Decided June 29, 1964.

*Guillermo S. Pierluisi* for petitioner. *J. B. Fernández Badillo,
Solicitor General,* and *Héctor R. Orlandi Gómez, Assistant
Solicitor General,* for intervener.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge
of Division, Mr. Justice Rigau, and Mr. Justice Dávila.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

The prosecuting attorney filed an information against
José Betancourt Rojas, known as José Rojas Betancourt,
of murder in the first degree, consisting in that on April 30,
1961 and in Arecibo, Puerto Rico, "he unlawfully, volun-
tarily, and maliciously, with malice aforethought and express,
deliberate intention of unlawfully killing, showing an aban-
doned and malignant heart, he assaulted and battered with
a bottle . . . José Valencia Rivera, a human being, causing
him fractures and trauma of grave nature in different parts
of his body, which caused the unlawful death of said human
being, José Valencia Rivera."

On the day set for the arraignment, defendant appeared assisted by his attorney, Mr. Antonio Reyes Delgado. He pleaded not guilty and requested trial by jury.

On July 11, 1961, day set for the trial, defendant waived the trial by jury, he was arraigned and he ratified his plea of innocence. Upon defendant's request the trial was postponed for the 18th of the same month and year. On the latter date defendant appeared, assisted by his attorney, and announced having stipulated with the prosecuting attorney to submit the case to the court for its decision on the evidence contained in the prosecuting attorney's preliminary investigation. After several warnings to appellant and being convinced that he understood the scope and consequences of the stipulation the presiding judge accepted it. Thus, the decision as to defendant's guilt or innocence remained in the hands of the judge.

Six days later, that is, on July 24, 1961, when the judge had not yet rendered his decision, defendant filed a motion entitled "Motion to set aside stipulation submitting the case through prosecuting attorney's preliminary investigation and defendant's attorney presenting his resignation." In said motion he alleged, in synthesis, that defendant's theory of defense prior to the stipulation and at the moment of its submission, was that of self-defense; that probably he could not understand the scope of the warnings made by the judge; that although defendant maintains the contrary, his attorney believes that the advice of other persons, attorneys or laymen, have contributed to produce in defendant's mind his desire to set aside the stipulation and that a trial be held; that his attorney resigns defendant's representation and agrees to return the fees retained.

After several appointments and suspensions, the motion copied above was argued on August 21, 1962, defendant being represented by his new attorney, Mr. Guillermo S. Pierluisi. The motion was set aside and on the evidence which

appeared in the preliminary investigation by the prosecuting attorney, the judge immediately found defendant guilty of voluntary manslaughter and upon defendant's request, ordered the case to pass to the probation officer for investigation and report.

On February 11, 1963, date set for the pronouncement of the sentence, defendant appeared assisted by his attorney, Mr. Guillermo Pierluisi. A suspended sentence of 4 to 8 years in the penitentiary was imposed on him.

On May 17, 1963 the prosecuting attorney filed a motion for reconsideration requesting that the suspended sentence be set aside and the immediate incarceration of defendant ordered, alleging, as ground, that in 1941 defendant had been sentenced to serve one year in the penitentiary for the crime of burglary in the first degree, which sentence he served and extinguished, for which reason, pursuant to § 2 of Act No. 177 of May 4, 1949, amending Act No. 259 of April 3, 1946, the court lacked authority to decree the suspension of the sentence entered against appellant on February 11, 1963 for voluntary manslaughter.

On August 15, 1963 defendant filed a motion requesting that the judgment be corrected by reducing the offense to aggravated assault and battery or in default thereof that it be set aside as well as the stipulation submitting the case on the preliminary investigation of the prosecuting attorney and that the case be set for trial. In said motion he alleges: (1) that the testimony of the doctor who performed the autopsy of the deceased did not show that the latter died as a result of the wounds caused by defendant; (2) that from the record "no evidence of self-defense appears as stated by the magistrate who sentenced defendant in his remarks in deciding the motion in the sense that Mr. Antonio Reyes Delgado had examined the record and had alleged that there was evidence to that effect in favor of defendant, when actually no such evidence appears from the record nor any evidence

whatsoever favoring defendant, his conduct in submitting the case on said record, having been, an unconditional surrender of defendant and an absolute waiver of all the remedies and rights provided by law for his defense, for which reason he was deprived of the due process of law", (3) that defendant upon learning that it was intended to set· aside the ·suspension of the sentence, has insisted with his attorney that the whole proceeding be reconsidered and that he be given the opportunity to defend himself in the corresponding trial.

The hearing of both motions was held the same day. The court denied defendant's motion and sustained that of the prosecuting attorney, consequently ordering the immediate incarceration of defendant. A motion for reconsideration was denied.

We issued a writ of certiorari to review the former proceedings.

The first error assigns the refusal of Judge Padró Parés, to dismiss the stipulation of Mr. Antonio Reyes Delgado and the prosecuting attorney to submit the case on the prosecuting attorney's preliminary investigation, thus depriving defendant of the due process of law.[1]

Petitioner maintains that the trial court abused its discretion and deprived him of the due process of law in refusing to set aside said order. On the other hand, the Solicitor General, after summarizing the proceeding from its first stages to the incidents which followed the pronouncement of judgment argues: "We understand that the case having been submitted to the trial court under said circumstances,

---

[1] Said order of Judge Padró Parés was newly attacked by defendant in his motion of August 14, 1963 and it was dismissed by the judgment of the trial court on August 26 of the same year. As we decided to review said judgment which includes a pronouncement refusing to set aside the original judgment and the prosecuting attorney's and the attorney's stipulation submitting the case on the initial proceedings, we will review the order of Judge Padró Parés, in discussing said first assignment of error.

there is no basis to support the error assigned, because the petitioner and his legal counsel validly waived the right that every defendant in a criminal prosecution must be confronted with and to cross-examine the witnesses for the prosecution, and they waived their right to introduce evidence in his defense. *People* v. *Ramírez*, 85 P.R.R. 428 (1962); *People* v. *Vargas*, 74 P.R.R. 134 (1952); *affirmed* in 210 F.2d 789 (1954); *cf. People* v. *Túa*, 89 P.R.R. 415 (1963); *People* v. *Cruzado*, 74 P.R.R. 872 (1953)*.*"

 We agree that defendant was validly entitled to waive trial by jury, to cross-examine the witnesses for the prosecution and to present evidence for the defense. Consequently, he was also entitled to submit his case to the court on a prosecuting attorney's preliminary investigation, without thereby rendering the proceedings void, if he did it voluntarily and completely aware of the scope and consequences of his actions. The trial court, however, had discretionary authority to set aside the stipulation of the parties and order a trial. The question to be decided is, therefore, whether considering all the circumstances arising from the record, the court made good use of its discretion.

Before the judge admitted the stipulation the following incident occurred:

"Judge: Betancourt Rojas or Rojas Betancourt, listen to what I am going to say and pay attention to the questions I am going to ask you. If I am not fortunate enough to make myself understood, do not answer the question, if you do not understand it; you tell me that you do not understand so that I may phrase it in another way. I don't want you to answer mechanically. I want you to think of the question I ask and then answer. Have I expressed it clearly?

Defendant: Yes, sir.

Judge: Look, you are accused herein of murder in the first degree for having killed the person known as José Valencia Rivera; that you, in order to perform said killing, illegally assaulted and battered with aforethought, with deliberate intent

of killing him, for which reason you are accused of murder in the first degree; the prosecuting attorney has based said information on a series of sworn statements taken by a judge or that the judge, in view of said sworn statements, found probable cause. The trial is today; all the witnesses have been summoned, you have been summoned, you have appeared with your counsellor and The People by the prosecuting attorney, colleague Efraín Crespo. The trial was going to be held herein. Originally you requested trial by jury, you waived that right to trial by jury. At the proper time I investigated your voluntariness and your intelligence to waive the trial by jury and in view of the fact that I realized that you were aware of what you were doing after the explanation of the judge, and after the instructions of your counsellor, that from the questions and answers it was inferred that he had instructed you, I ordered the trial to proceed by court without a jury, that is, by the judge. On said date it was postponed for today and today you request through your counsellor, not to hold the trial by calling the witnesses one by one, nor having them examined by the prosecuting attorney and cross-examined by you, but instead you pray that the case be decided on these statements, of these witnesses appearing in these documents. Have you understood?

Defendant: Yes, sir.

Judge: Do you perchance see the face of Juan López Sagastibelza? You don't even see his photograph herein?

Defendant: No, sir.

Judge: Do you mean to say that you are not seeing him?

Defendant: No, sir.

Judge: Sure, when he testified herein you were not seeing him, you were not there?

A. No, sir.

Q. Now you come to court and request to be tried on said statement and on the other statements without either you or your counselor having the opportunity to cross-examine him. Do you understand what I want to tell you?

A. Yes, sir.

Q. Then I would rather have to assume that you know what he testified. Do you know what he testified and what each and every one of the witnesses testified? This question is addressed to defendant and attorney Reyes Delgado.

Mr. Reyes Delgado: I know it, because I read it and I read it to defendant.

Judge: Then you know what each of the 7 or 8 witnesses who appeared herein testified?

Mr. Reyes Delgado: What those witnesses testified whose testimony appeared herein in the record.

Judge: Do you know what they testified?

A. Yes, sir.

Q. Then you want the court to understand that you would not have need of the privilege, of the prerrogative provided by law to confront and cross-examine the witnesses against you?

Mr. Reyes Delgado: That is what I understand, that we do not need to confront them and I instructed defendant of his right and the implications of his waiver.

Judge: Defendant, have you been frank and sincere with your counselor?

A. Yes, sir.

Q. Not only in explaining to him and in giving him the history of the case, but also in an exchange of views which you had to submit the case on the record?

A. Yes, sir.

Q. Have you trusted, before and after, and do you trust your counselor right now?

A. Yes, sir. I have trusted him all the time.

Q. Then, do you think that in acting and directing and guiding you in this case to hold a trial in said manner, to submit it on preliminary investigation your counsellor has displayed all his experience, his intelligence, his knowledge in the case?

A. Yes, sir.

Q. Are you satisfied with all that?

A. Yes, sir.

Q. Do you think that you could not possibly be injured or prejudiced in the most fundamental rights as a citizen?

A. I trust him and I believe he can take the case to that extreme.

Q. Are you satisfied to submit it like that because you know what each of the witnesses testified?

A. Yes, sir.

Q. Do you believe that it is not necessary to submit the witnesses to examination?

A. Yes, sir, it is not necessary.

Q. Then, do you submit yourself to what the judge may infer from said statements?

A. Yes, sir.

Q. Judge: Alright, but I cannot decide right now.

Mr. Reyes Delgado: Alright, it is not necessary.

Judge: I have 3 or 4 days to study and digest this record.

Mr. Reyes Delgado: There is no need of waiver, but if Your Honor wishes, let it be entered in the record.

Judge: Do the parties agree that the judge may take 6 or 8 days to study the record?

Mr. Reyes Delgado: Whatever is necessary.

Judge: Do defendant and his counsel bind themselves to appear on the date and hour that they are summoned?

Mr. Reyes Delgado: Yes, sir, alright.

Judge: Then you may withdraw." (Solicitor General's Report, pages 3 to 6.)

■ Thus, defendant had full knowledge of the evidence in the preliminary investigation and of the scope and consequence of the stipulation, having, furthermore, accepted it voluntarily. Even in the case in which defendant enters a plea of guilty, the court has discretion before rendering judgment to permit that it be withdrawn and substituted by another of not guilty, but when defendant refuses it, we shall not disturb its decision unless it be shown that it committed abuse of discretion. See § 164 of the Code of Criminal Procedure (34 L.P.R.A. § 403), Rule 71 of Criminal Procedure, and *People* v. *Franco*, 70 P.R.R. 750 (1950).

■ A court which refuses to permit defendant to withdraw his plea of guilty does not abuse its discretion if it is not shown that the plea of guilty was entered through a misunderstanding of the law and the fact or consequences of misrepresentation by his counsel or the state's attorney or someone else in authority, or where it appears there is doubt of his guilt, or that he has any defense at all worthy

of consideration by the jury or the judge, or that the ends of justice will be best served by submitting the case to the judge or the jury for its decision. See, *Annotations*, 66 A.L.R. 632 *et seq*.

■ Although in his motion requesting the dismissal of the stipulation defendant alleged that his theory of defense was that of self-defense, no scintilla of evidence either through statements or in any other form was attached to said motion to move the discretion of the court in his favor. On the other hand, it cannot be correctly affirmed that his counsel unconditionally surrendered all of defendant's rights because it is evident that in agreeing to submit the case on the initial proceedings the attorney relied, without having full grounds therefor, on that (a) the evidence in the preliminary investigation did not establish the crime of murder in any of its two degrees because of the absence of malice aforethought, as decided by the judge in rendering his verdict and (b) he considered insufficient the certificate of autopsy to connect the cause of the victim's death with the injuries caused by defendant.

■ Another reason to dismiss said error would be that defendant accepted the judgment of conviction and the sentence imposed on him and it was not until the prosecuting attorney requested the modification of said judgment that he requested the dismissal of the same.

■ In his second assignment petitioner maintains that the trial court erred in refusing to correct the judgment reducing the offense to aggravated assault and battery. He maintains that the certificate of autopsy attached to the initial proceedings establishes that the party assaulted died of broncho-pneumonia and not as a result of the injuries caused to him by defendant.

He is not right. The evidence for the prosecution establishes that defendant assaulted José Valencia Rivera causing him contusions on the skull with a bottle. Said facts

occurred on April 30, 1961. The wounded party was confined in the District Hospital of Río Piedras and died on May 3, of the same year 1961, that it, three days after he received the wounds. Although in the certificate of autopsy the pathologist states that the immediate cause of Valencia's death was *bilateral confluent broncho-pneumonia*, from said certificate it is inferred that the wounds caused by defendant were the ones that brought on the chain of circumstances which finally culminated in the death of the injured party. *People* v. *González Ruiz, ante*, p. 565. No other interpretation can be given to the language of said certificate, especially if it is considered that the pathologist himself qualified the death as homicide.[2]

---

[2] We copy the following from said certificate of autopsy:

*"Cranial cavity:* The scalp shows a great deal of hemorrhage underneath the incision previously described over the left ear lobe. The skull presents multiple fractures of the left temporal bone extending from the squamous portion and continuing into the petrous portion of this bone. Superficial to the dura in this area there is a small epidural hemorrhage amounting to 15 to 20 cc. of blood.

*Brain:* Weighs 1500 gms. and shows extensive edema of both hemisphere manifested by flattening of the gyri, narrowing of the sulci, herniation of the unciform gyri and of both cerebellar tonsils. There are multiple contusion foci on the lateral aspect of the left temporal lobe and a moderate amount of subarachnoid hemorrhage over this area. Subarachnoid hemorrhage is also evident on the opposite temporal lobe. There are contusion foci of the left uncus and subarachnoid hemorrhage is also evident over the under aspect of the temporal lobe.

ANATOMICAL DIAGNOSIS:
1. Craniocerebral injury manifested by:
 a. Skull fractures.
 b. Epidural hemorrhage.
 c. Subarachnoid hemorrhage.
 d. Contusion foci of the cerebral cortex.
 e. Massive edema of the brain with herniation of the cerebellar tonsils and unciform gyri.
2. Bilateral confluent bronchopneumonia.
3. Aspiration of gastric contents.

FINAL NOTE:
This 32-year-old mulatto male is said to have been hit over the head with a bottle during a brawl. He was admitted to the District Hospital in Río Piedras on 4-30-61 and died on 5-3-61. The autopsy revealed cranio-

■ Finally the trial court did not err in setting aside the parole sentence which was originally granted to defendant. In the year 1941, when defendant was only 17 years old he was convicted and sentenced to serve and he served one year in the penitentiary for the offense of burglary in the first degree. He was then prosecuted as an adult pursuant to the law in force.[3] In case of homicide the law does not authorize the court to put the defendant on probation by reason of his former conviction. Act No. 259 of April 3, 1946, as amended (34 L.P.R.A. § 1027). Neither said Act nor the new legislation on minors (Act No. 97 of June 23, 1955, 34 L.P.R.A. § 2001, Cumulative Supplement for 1964) contained any exception authorizing a judge to grant probation to one convicted of felony, previously, and convicted and sentenced as adult but at that time under 18 years of age.

The decision ordering the suspension of the sentence of 4 to 8 years in the penitentiary for the offense of voluntary manslaughter being null and void, it is proper to set it aside and order the execution of said sentence. *People* v. *Marrero*, 68 P.R.R. 854, 856 (1948).

As the errors assigned were not committed, the writ of certiorari issued will be annulled.

---

cerebral injury as listed in the anatomical diagnosis. However, the immediate cause of death was unquestionably the bilateral confluent .bronchopneumonia.

*Manner of death*: Homicide."

[3] Act No. 37 of 1915 (34 L.P.R.A. § 1948).